And we'll next hear argument in the case of Anh Tuyet Thai v. Saul, Commissioner of Social Security. May it please the Court, I'm Alexandra Manbeck, attorney for the appellant. This is, Your Honor, a simple case of illegal searchers' violation of the Fifth Amendment right of access to the administrative courts and also violation of the First Amendment right to have access to the courts. The district court did find that the First Amendment and Fourth Amendment right of the plaintiff were violated, but the court dismissed the case on the basis of mootness and also in finding that there was no bribing case of action. I submit, Your Honor, that the district court erred in dismissing the cause of action of two of the plaintiffs, Mr. Duong and Mr. Nguyen, because the court said that the court tied this case to a prior case that was mooted, the Phong case. And I submit, Your Honor, this case has nothing to do with the prior case that was mooted. So as I looked at the Second Amendment complaint, I think that's what you're referring to with Duong and Nguyen, it was framed on retaliation and various actions taken based on their membership in the class of the 2013 class action. So as I understood the district court's ruling, they couldn't state a claim for that type of retaliation based on their membership or participation in the class action because, in fact, they were not participants in the class action. So what was wrong with that determination? I submit, Your Honor, I think the district court erred in the sense that there were two different searches. There were searches in 1914 and searches in 1915. There are two different sets of searches. And the district court made a mistake in conflating them and tying this case to a prior case that deal with filing affidavit in district court. Two of the appellants in this case had never filed any affidavit. They were suing simply on the basis of illegal search against them. So what should I look at in the Second Amendment complaint that shows me that their claims in the Second Amendment complaint were not tied to their participation in the 2013 class? What language should I look at or what paragraph should I look at? Mr. Duong and Mr. Nguyen had never filed any affidavit in the prior class action, Your Honor. Right. And that's why they were dismissed. But the district court said the reason that the district court was dismissing them was because the Second Amendment complaint was based on affidavits filed in the class action and because they hadn't, the court dismissed them. So I'm wondering if you can point me to the language in the Second Amendment class action where they're making claims that are not related to the 2013 class action. I don't have the Second Amendment complaint, Your Honor, but if you look at the part that deals specifically with these two plaintiffs, Mr. Duong and Mr. Nguyen, they didn't allege anything having to do with filing affidavit. They were just alleging in the Second Amendment complaint that they were illegally searched. They had nothing to do with filing affidavit. And that's one of the reasons we made the appeal to the court here in the sense that we think that the district court made a mistake in confounding this case with the prior case that was mooted because half of the plaintiffs in this case have nothing to do with filing affidavit. And that's the reason that— Are there just two plaintiffs left? Just two? There are three plaintiffs left. The association? Well, there are three individual plaintiffs left. Who's the third, please? Excuse me? Who are the three? Okay, Ms. Thai. Ms. Thai. Thai Anh, Thai, and then Tommy Nguyen. And Duong Duong. Duong Duong are the three individual plaintiffs, and the rest, Mr. Chau and the Vietnamese. That's the Vietnamese Association. That's an organization. Yes, but are those other two still plaintiffs? Yes, Your Honor. Ma'am, what is the association's claim? What? What is the association's claim? What was—I'm sorry, I don't understand. The one plaintiff is still the association? One plaintiff is what, Your Honor? Is the association still a plaintiff? Yes, Your Honor. What is its claim? Its claim that its activities have been decimated by the search that was conducted by the Social Security Administration. Is it a 1983 claim? The— Is it claiming a denial of a constitutional right? It's claiming on behalf of the Association of Vietnamese Refugees that it has not been able to conduct an activity. It claimed the First Amendment was a violation of the activity because of what the Social Security Administration had done to its members. So it's bringing claim as an organization. All right. All right. What's Ms. Thai's claim? Ms. Thai claimed illegal search, Fourth Amendment, Fifth Amendment, that fabrication of evidence in her case. Okay, hang on. Her search was 2014 or 2015? I'm sorry. Ms. Thai's search, when did it happen? 2014, Your Honor. She's 2014. And the other two, Doan and Nguyen, their search is 2014 or 15? 14. They're all 14 searches. All 2014? Yes, Your Honor. We don't have anybody here that appealing the 2015 search. Okay. Did any of these three, Thai, Doan, or Nguyen, file affidavits? Only Thai had filed affidavits, not Doan or Nguyen. All right. Thank you. So let me ask you about Thai's damages claim. So she's bringing a claim under Section 1983 against the two state agents, Phyllis and Ora and Sanchez, for their entry into her house. Is she claiming the complaint was a little ambiguous about whether they entered her house without her consent, or the complaint says they came up to the door and they introduced themselves, and then they asked her questions. And when it quotes Thai's affidavit, it said they barged, they suddenly appeared and barged in, or whatever that effect. So what exactly is the nature of the claim here? Is it the case that they forced their way into the house without her consent, or that they were just frightening because they appeared at the house and had guns? Your Honor, the claimant say that they came to the house and walked into it without her consent, and they had guns and bachelors, and so she didn't consent for them to come into the house, and she did not consent to the interrogation. So she testified that she was so afraid of the way that they walked into the house that she had to answer the question because she thought that the police, she wasn't aware of her right not to answer the question. And so everything was done, was intimidating to her because of the gun and the bachelors. But she doesn't say that she told them to leave or that she told them not to come in. No, she did not say that she told them not to come in. She said they just walked in, and she was so afraid that she just did not object. She doesn't say they broke down the door. No, no, no. Not she opened and they came in. Right, they just walked in, and she was so paralyzed with fear that she would let them in. She didn't object if that is the question. Yeah, okay. But she did complain that they asked a lot of intrusive questions, and then when she broke down, they were forcing her to keep asking questions. She does say something that I told them I could no longer speak to them, and apparently she didn't speak to them after that. Right. After she broke down, then she was unable to talk anymore, and then they left after that. Then after they left, they generated a report that is an issue in this case. They generated a report saying that she's malingering. She's pretending to be more sick than she was, and that report made its way into her file without me knowing or her knowing it until when the administrative judge denied the application. That's when we saw he mentioned the report as one of the proof that she had no credibility, that her testimony could not be believed, and that's the reason that we – and what's disturbing, Your Honor, is that the administrative law judge did not issue his decision until after the district court issued his decision. After the district judge – and that was like a year and a half that the hearing had taken place. So the Social Security Administration, the administrative law judge, waited a year and a half, and then five days after – not even five days, like three days after the district court dismissed the case on the basis of mootness, then the administrative law judge issued a decision saying that she – among others, argument that she was incredible because she was found to be malingering and she was found to be in better physical and mental condition than what she alleged in her benefit application. So the district court said that it couldn't rule on the benefits decision, that it didn't have the jurisdiction to do that. So when the ALJ made its benefits decision with respect to Ms. Thai, did Ms. Thai appeal that ruling on the basis of the – ALJ was relying on the report that was generated by the allegedly unlawful search? Yes, she's applying – she's – Appealing. Right, appealing that in the district court. But the problem with Social Security case, Your Honor, is that once a piece of evidence is put into your file, there's no way you could refute that because under Section 405A of the Social Security Act, that is the file. That cannot – you cannot add anything to it. She cannot even file an affidavit or anything about it in the district court. When filing an appeal with the district court or the appeal counsel, that is a permanent – those report of malingering are permanent feature of our application file. And so there's no way to refute them, to say that they were not true or they were made up. There were no witnesses, no – there was somebody who translated, but there was no proof that she said the things that the report said that she said or that she looked better than she was. She didn't have a cane. For example, she – Do you want to save some time for rebuttal? Excuse me? Would you like to save some time for rebuttal? Oh, sure. Thank you. Good morning. May it please the Court. Courtney Dixon from the Department of Justice on behalf of the federal defendants. There are two sets of claims in this appeal against the federal defendants, which the district court properly dismissed, and I'm happy to go through them quickly. The first set of claims are claims for prospect of relief against the Social Security Administration, which the district court dismissed for lack of justiciability. And the second set of claims are claims for monetary damages against individual federal defendants under Bivens, which the district court dismissed for a lack of cause of action. To just address those Bivens claims quickly, in addition to the ground relied upon by the district court, this court can dispose of those claims on basic pleading standards. Plaintiff has affirmatively abandoned any claims against Agents Pilcher and Patel, who are the only two federal agents in the complaint who allegedly had any contact with the plaintiffs in the context of these searches. So the claims against Hagar and Tran continue based on their – well, Hagar, at least, based on her being a supervisor? Yes, Your Honor, and that's all the complaint alleges against her, is that she provided negligent supervision. But, of course, that's a legal conclusion that's not entitled to the presumption of truth. There are no individual factual allegations about her conduct, and there isn't respondeat superior liability under Bivens, so that gets rid of Ms. Hagar. With respect to Mr. Tran, the complaint alleges that he made various phone calls to plaintiff on tie, beginning in 2005, perhaps spanning to 2013. For example, plaintiff alleges that he called her stupid in response to her application for loans. It's unclear how that relates to these alleged searches in the complaints, and certainly none of those allegations amount to a constitutional violation. So can you respond to her opposing counsel's argument that Dwan and Nguyen, in the second amended complaint, did allege unlawful searches and other constitutional claims independent of their membership in the 2013 class? Your Honor, the second line of the second amended complaint, like the other complaints that have been filed in this case, state that since 2013 when plaintiffs participated in this class action, they've been subject to a campaign of harassment and intimidation by SSA. And, of course, Ms. Tai, who is still here on appeal and is alleging claims along with Mr. Dwan and Mr. Nguyen, she filed an affidavit in the FAN litigation. Many of the plaintiffs attached the affidavits that they had filed in the FAN litigation to the complaints in this case. So I think the district court was correct to understand plaintiff's claims as related to the 2013 class action. And to the extent that plaintiffs are meaning to allege that Mr. Dwan and Mr. Nguyen were instead retaliated against on another basis, plaintiffs haven't plausibly alleged that, and so their claims would have been properly dismissed in any event. So opposing counsel says it's not retaliation, if I'm understanding opposing counsel correctly, but just a standalone unlawful search and other violation of constitutional rights. The district court considered all of the plaintiff's claims under the Fourth Amendment in some of the earlier motions to dismiss in this case. And in the context of that order, the district court found that only plaintiff Tai had plausibly alleged a Fourth Amendment claim. He focused on her language that they had barged into their home. I take appellant's argument today to be that that, in fact, might not be what she meant to allege with Ms. Tai either. But I think the district court considered Mr. Dwan and Mr. Nguyen's Fourth Amendment allegations in one of the earlier motions to dismiss, and they allege, as many of the other plaintiffs do, that SSA had merely come and knocked on their door. And so I think their Fourth Amendment allegations, to the extent that they have them, again, were properly dismissed for simple failure to plausibly allege a claim. I'm sorry. And you're saying that was, I would call it, on the merits of saying that barged in isn't enough to allege an illegal search? Ms. Tai is the only plaintiff who says barged in. And what happened to her claim then? The district court in one of the earlier motions to dismiss had said of all the plaintiffs who were alleging Fourth Amendment claims, Ms. Tai had alleged a Fourth Amendment claim and the others hadn't. Right. But as to her, then, what ultimately happened in this lawsuit on her alleged Fourth Amendment claim? Your Honor, going back to my introduction, to the extent that there are prospective claims against SSA, those were dismissed for lack of justiciability. She has a 1983 claim against Sanchez and Ellison. Certainly, Your Honor. And my friend, Ms. Lieber, is going to address those claims. I don't represent those defendants. Okay. As to that, there are these Bivens claims and there's an argument about were they federal agents or state agents. As between the two of you, is it a whipsaw? I mean, they've got to be one or the other, you would think. Your Honor, she's alleged Section 1980. They've alleged Section 1983 claims. They've made clear in their briefing that the only claims that are still here on appeal with respect to these plaintiffs are 1983 claims against these men? The Bivens claims against Villasenor and Sanchez. No, Your Honor. Another lawyer might have said A or B. Okay, got it. Yes, Your Honor. And with respect to the prospective relief claims against the Social Security Administration, plaintiffs have to, in order to have standing to seek prospective relief, plaintiffs have to demonstrate a real insufficient likelihood that the conduct will again recur. The four corners of the complaint don't demonstrate that, Your Honor. Plaintiffs allege one retaliatory, allegedly, interview that happened in 2014. Nothing to demonstrate that those searches have or will recur in the future. And, of course, plaintiff hasn't even stated in their brief that they believe that these interviews will recur in the future. Instead, they claim that they're seeking prospective relief now related to individual benefits determinations. But as the district court found, the Social Security Act deprives the district court of granting relief with respect to that. That claim arises under the Social Security Act. It has to be channeled through the agency through in accordance with the administrative review scheme. I'll note briefly a felon has stated that there's no way to challenge information in their administrative file. Of course, we lay out in our brief that there are many ways, in fact, to do so. The Social Security Administration's litigation manual provides a right for claimants to look at their benefits file. They can present evidence. They can even ask the ALJ to subpoena witnesses. And, of course, if anything takes the claimant by surprise at an ALJ hearing, they could ask for a supplemental hearing. They could seek an appeal to the Appeals Council. And they could finally get review in district court from any final decision of the commissioner. Can a piece of evidence, if it's determined that the evidence was illegally obtained, can it be removed from the file? Do those rules apply in the Social Security hearing context? I don't know how the agency would handle that, Your Honor. I mean, the ALJ has control over what isn't admitted into a hearing. I don't know how the agency would handle if that argument was presented to them. But, of course, under the Social Security Act, it requires presentment and exhaustion of claims arising under the Social Security Act. And certainly an argument about what is in a claimant's file in the context of benefits proceedings goes to the very heart of what the Social Security Act requires to be presented and exhausted through the agency. If there are no further questions, Your Honor, I'll save the remaining amount of time for Ms. Lieber. All right. Thanks very much. Good morning, Your Honors. Megan Lieber on behalf of Appellees Villasenor and Sanchez. I do want to begin with the Fourth Amendment claims against Villasenor and Sanchez. First of all, the Third Amendment complaint is the operative complaint where Villasenor and Sanchez were first added as defendants. There are no allegations pertaining to any other plaintiffs other than Ms. Tye related to Villasenor and Sanchez. And with respect to Ms. Tye, the Third Amendment complaint is unique in that, yes, at the motion to dismiss stage, we are limited to the four corners of the pleadings. And we actually do have sworn testimony from Ms. Tye attached as an exhibit to that Third Amendment complaint. And although there is an allegation in the Third Amendment complaint alleging that Villasenor and Sanchez barged into her home, the affidavit actually contradicts that and states they knocked on her door. She answered their questions until she could no longer answer the questions. So what the affidavit does not state is that she did not consent. Is that the affidavit of May 29th, 2014? Correct. It's 243 in the excerpt of record. But that does have the words, unexpectedly barged into my home in paragraph two, doesn't it? I'm reading from the district courts. It does say that, Your Honor. I'm reading from their complaint page. It does say that, Your Honor, but it's contradicted by the first paragraph where she says they banged on the door of my home. Let's say we take the allegations in the complaint and all the inference in the light most favorable to the plaintiff. And so reading that language together, they banged on the door of my home and then they barged in, unexpectedly barged in. So if we assume that they did enter without her consent, which taking the language in the complaint in the light most favorable to her is certainly a possible inference that could be raised, then why wouldn't she have a cause of action under 1983 for unlawful entry? Well, Your Honor, taking the arguments of Ms. Manbeck earlier and the statements in the complaint, you know, it is unclear as to whether or not Ms. Thai simply felt intimidated because they were law enforcement or if they entered her home without consent. Well, I'm looking at the barged into. So let's say for purposes of argument that we read barged into my home as entering without consent. So then would Villasenor and Sanchez have qualified immunity? Or would we say it was pretty clear law enforcement officers couldn't enter someone's home without their consent? They would have qualified immunity, Your Honor. I would argue that based on the knock on the door and the other statements that she was intimidated by, you know, their badges and their guns, that this is a clear knock and talk case, which has been authorized by the Supreme Court. It's not if the facts are construed in light and most favorable. It talks about banging on the door and barging in. So could you go to your qualified immunity argument? Sure. Under qualified immunity. Because we have to construe these facts in light and most favorable. Sure. In this case, this is not a criminal investigation. This is not a typical law enforcement investigation. So whether or not they approached her home and banging on the door and entering her home, whether or not she understood, whether or not she could ask them to leave, and she did state that she did ask them to leave, that right is not clearly established. And there is actually a Ninth Circuit case from late 2018. What right are you speaking of? The Fourth Amendment, her constitutional rights to be free from search and seizure. So it's fairly clearly established that law enforcement, absent some sort of exigent circumstance or a warrant, can't bang, knock down somebody's door and walk into your house without consent. Aren't I right there? You are right, Your Honor. But I think that it's a little muddled where it's a civil investigation and it's an investigation for benefits. We're not talking about a life. Before you leave this point, just to be clear so you can address, I think you just said it's not clearly established that she would have the right to ask them to leave her home. Is this the premise for your answer to Judge Acuda's question? No. No. The issue is whether or not when these law enforcement agents went to her home to investigate her claim for disability benefits, whether or not that interview was a clearly established, whether or not the interview violated a clearly established Fourth Amendment right held by Ms. Tye. Right. And so I'm trying to figure out, I think her contention is that she had a clearly established right to, and that's what Judge Acuda's point is, clearly established right that has to do with this entry into her home and ask them to leave and that they would not have a right, especially into her home, a very special and protected place, to enter against her will if they didn't have a warrant or some such thing. So do you want to speak to that? I do want to speak to that. There is, again, a fairly recent October 2018 Ninth Circuit case, Whalen v. McMullen, and in that case the officer went to the home of a claimant and set up a ruse and introduced himself as a law enforcement agent but said he was investigating a string of thefts in the neighborhood. Identity theft. Identity theft, correct. She invited him in, in that case. She did, but... And so it's not really, if we're looking at qualified identity, I think you could say it's not clearly established that you can't deceive to trick someone into entering into your house or it wasn't before this case, but she's not alleging a trick. She's saying they barged in, they banged on the door and barged in. Again, and it is distinguishable in that regard that they did announce themselves, they did not use a ruse. It appears based on the allegations in the complaint and her affidavit that they very clearly said that they were investigating her claim for benefits. They asked about her disabilities. They asked about her injuries. So in that case, the court did find that there was, in the Whalen case, the court did find that there was a Fourth Amendment violation but found that it wasn't clearly established whether or not his civil investigation on an issue of benefits would be a violation of her Fourth Amendment rights. This is not a ruse case. So if we're just talking about getting back to this case, please. What is it a reasonable officer wouldn't know here? Whether or not when they knock on the door and they start questioning her about her benefits, whether or not that's a violation of her Fourth Amendment rights in a civil context. But you have to distinguish the questioning from the entry. That is, I understand the point that when you're angry and abusive and asking questions, that might not be clearly established. But if, and I grant if, you enter against a person's consent or break down the door or refuse to leave, why would it matter whether you call it civil or criminal? That wouldn't matter, Your Honor. I think the issue is that there are conflicting facts in the affidavit and in the complaint whether or not they barged in or suddenly appeared. I mean, they didn't call her in advance and then knock on her door. They appeared at her home in the afternoon. And so there are conflicting allegations in the complaint as to whether or not it's an issue of them suddenly appearing or if they entered her home without consent. But if all there is is conflicting, then issues of fact would go to them. Wouldn't, is a better argument, I don't know, is a better argument that entry without consent as opposed to entering against consent, against non-consent. If you knock on the door, say, hey, I want to talk to you, and you walk in, is it clearly established that that violates the Fourth Amendment? Your Honor, I think even if in this case it is clearly established that a Fourth Amendment right was violated, I think then we have to go to the jurisdictional issues of 1983, which was the basis that the district court dismissed the case. Correct. Okay, you're well over your time. Sorry, I apologize. We have a few seconds for rebuttal. Your Honor, I would like to bring to your attention the affidavit of the other two plaintiffs in addition to Ty. It's the Second Amendment Complaint, Paragraph 31 and 34, because they are alleging that these two state officers also went to the house of Duong and Nguyen, and with respect to Duong, they knock on the door, he open the door, and they raise their jacket, and they make sure that he saw their gun, and they just walk in. So that is the case of Duong. And then the case of Nguyen, it's the same thing. They just knock on the door, he open, and then they show the gun and the badge, and they walk in. So we have a pattern of action here with respect to at least three cases we were able to document, and it's the Second Amendment Complaint, Paragraph 34 through 37. So, Your Honor, I submit that these officers know what they were doing, that they know that they want to intimidate these plaintiffs by knocking on the door and showing the gun and just walking in, because all of these three plaintiffs do not, I think two of them at least, do not speak English. They were former refugees, and just the fear of seeing a police officer is enough for them to let anybody in. So I don't think there was any consent in this case. And if you look at all three of them, even if the defense counsel say that they will learn only of Thai's case, but we submit earlier to you, Your Honor, that the district court made a mistake in dismissing Mr. Nguyen and Mr. Duong at an early stage. But if they were looking at the totality of all three of them, there is a pattern of forced entry. Okay, I think we have your argument. Thank you for your time. Thank you. The case of Anh Thuyet Thai v. Saul is submitted.
judges: Boggs, Ikuta, Christen